# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSE MARIE RIOS,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of Social Security,[1]<br><br>Defendant.<br>_______________________________/ | Case No. 1:25-cv-00143-JLT-SKO<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE GRANTED, THE FINAL DECISION OF THE COMMISSIONER OF SOCIAL SECURITY BE REVSERSED, AND THE ACTION BE REMANDED TO THE COMMISSIONER FOR FURTHER PROCEEDINGS<br><br>(Doc. 16)<br><br>14-DAY DEADLINE |

## I. INTRODUCTION

On February 4, 2025, Plaintiff Rose Marie Rios ("Plaintiff") filed a complaint seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States

[1] On May 6, 2025, Frank Bisignano was appointed the Commissioner of the Social Security Administration. *See* https://www.ssa.gov/news/press/releases/2025/#2025-05-07. He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

Magistrate Judge.[2]

For the reasons set forth below, the undersigned recommends that Plaintiff's motion for summary judgment be granted, that the final judgment of the Commissioner be reversed, and that the action be remanded to the Commissioner for further proceedings.

## II. BACKGROUND

Plaintiff was born in 1970, has a limited education, and previously worked as a cleaner. (Administrative Record ("AR") 24, 49, 64, 208, 212, 253, 266.) Plaintiff filed a claim for SSI on October 22, 2021, alleging she became disabled on January 1, 2018, due to back problems and high blood pressure. (AR 17, 21, 50, 65, 212, 266.) Plaintiff thereafter amended her alleged onset date to October 22, 2021, the application date. (AR 17, 44, 300.)

### A. Relevant Evidence of Record[3]

#### 1. Medical Evidence

On December 12, 2022, Plaintiff underwent L5-S1 bilateral foraminotomies and decompression surgery. (AR 377–78.) She presented to the emergency department complaining of back pain and rectal bleeding on December 25, 2022. (AR 444–49.) An x-ray of Plaintiff's lumbar spine performed on December 26, 2022, showed "[g]rade 1-2 spondylolisthesis at L5/S1 resulting in moderate bony neural foraminal narrowing." (AR 447, 450.)

An x-ray of Plaintiff's lumbar spine performed on August 28, 2023, showed "congenital L5 pars interarticularis defects" bilaterally, with "displacement"; "osteopenia"; "[s]evere L5-S1 degenerative disc narrowing" with "vacuum phenomenon"; and "[b]ilateral L4-S1 facet hypertrophic changes." (AR 382–83.) A cervical spine x-ray performed that same day showed "[s]evere C5-C6 degenerative disc narrowing" and "[m]ild C5-C6 spondylosis." (AR 385–86.)

#### 2. Opinion Evidence

In February 2022, State agency physician J. Mitchell, M.D., found Plaintiff limited to medium work with frequent climbing and crouching, and unlimited for all other postural activities. (AR 57–

---

[2] The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. On July 13, 2026, this case was reassigned to the undersigned. (*See* Doc. 22.)

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

59.) Upon reconsideration in October 2022, State agency physician L. Bobba, M.D., found Plaintiff capable of light work with occasional climbing ladders, ropes and scaffolds, stooping, crouching and crawling; frequent climbing ramps/stairs, and balancing; and frequent overhead reaching. (AR 76–78.)

**B. Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on March 9, 2022, and again upon reconsideration on October 19, 2022. (AR 17, 94–88, 96–100.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (AR 101–120.) The ALJ conducted a hearing on February 27, 2027. (AR 32–48.) Plaintiff appeared by telephone at the hearing with her attorney and testified as to work history and alleged disabling conditions. (AR 36–44.) A vocational expert (VE) also testified at the hearing. (AR 44–47.)

**C. The ALJ's Decision**

In a decision dated April 10, 2024, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 17–26.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 19–26.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity since October 22, 2021, the alleged onset date (step one). (AR 19.) At step two, the ALJ found the following impairments to be severe: degenerative disc disease of the cervical and lumbar spine, status post L5-S bilateral foraminotomies and decompression, and obesity. (AR 19–20.) The ALJ further found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 20.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC) and applied the assessment at steps four and five. *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR [§] 416.967(b) except no more than frequent climbing of ramps and stairs, preclude climbing of ladders, ropes or scaffolds, no more than frequent balancing, no more than occasional stooping, no

> more than frequent kneeling, no more than occasional crouching and crawling; no more than frequent overhead reaching bilaterally

(AR 20–24.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision." (AR 23.)

The ALJ determined that Plaintiff could not perform her past relevant work (step four) but that, given her RFC, she could perform a significant number of jobs in the national economy, specifically counter attendant, fountain server, and marker (step five). (AR 25.) The ALJ concluded Plaintiff has not been under a disability since October 22, 2021, the application date. (AR 25–26.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on December 13, 2024. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

## III. LEGAL STANDARD

### A. Applicable Law

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step

> two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B. Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*,

253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV. DISCUSSION

Plaintiff asserts that the RFC was not supported by substantial evidence because the ALJ independently interpreted medical records without the aid of a medical expert rather than further developing the record. (Docs. 16, 19.) For the reasons that follow, the undersigned agrees that the ALJ's RFC determination lacks the support of substantial evidence and on that basis will recommend that the decision be reversed and the action be remanded for further proceedings.

### A. Legal Standard

The RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis, which means eight hours a day, for five days a week, or an equivalent work schedule. Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-9p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b),

(c), and (d) of 20 C.F.R. 404.1545 and 416.945." *Id*. An "RFC is not the ***least*** an individual can do despite his or her limitations or restrictions, but the ***most***." *Id*. (emphasis in original). The determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. *See* 20 C.F.R. §§ 414.927(d)(2) (RFC is not a medical opinion), 414.946(c) (identifying the ALJ as responsible for determining RFC). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883; *see also* 20 C.F.R. § 414.945(a)(3) (RFC determined based on all relevant medical and other evidence).

Further, when formulating an RFC, ALJ's have some discretion to perform independent review of medical evidence and translate that evidence into functional terms. *See Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."). For example, claimants routinely receive continued care between the state agency physician's review at the initial/reconsideration levels and the ALJ's subsequent hearing decision, thereby generating new medical records. However, this Court has previously rejected the proposition that an ALJ must obtain a comprehensive consultative opinion in every case before rendering an RFC. *Scott T. C. v. Comm'r of Soc. Sec.*, No. 1:23-cv-01776-SAB, 2025 WL 227288 (E.D. Cal. Jan. 17, 2025); *see also Meadows v. Saul*, 807 F. App'x 643, 647 (9th Cir. 2020) (noting there "is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no limit on such a gap in time.").

Still, an ALJ cannot interpret raw medical data when determining a claimant's RFC. *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975); (the ALJ was not qualified as a medical expert and therefore could not permissibly go outside record to consult medical textbooks for purpose of making his own assessment of the claimant's physical condition); *accord Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, . . . the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the determination."); *Manso-Pizarro v. Sec'y of Health & Hum. Servs.*, 76 F.3d 15, 17 (1st Cir. 1996); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own

independent medical findings."). "Courts have considered MRIs, radiological studies, and X-rays to be raw medical data." *Howell v. Kijakazi*, No. 20-CV-2517-BLM, 2022 WL 2759090, at *7 (S.D. Cal. July 14, 2022). Such records generally "reflect only the findings, impressions, and medical diagnoses, which are difficult for a lay person to interpret." *Id*. (citing *Escudero v. Comm'r of Soc. Sec*., No. 1:18-CV-01136-EPG, 2019 WL 4917634, at *2 (E.D. Cal. Oct. 4, 2019) (finding "descriptions of medical documents post-dating the physician's opinions appear to be very medical in nature and not susceptible to a lay understanding.")).

**B. Analysis**

As pertinent here, State agency consultant Dr. Bobba reviewed Plaintiff's medical file at the reconsideration level in October 2022 and concluded that Plaintiff could perform a range of light work. (AR 76–78.) Dr. Bobba's review included medical records and imaging studies from November 2020 to July 2022, as well as a consultative examination performed in January 2022. (AR 72–73.)

The ALJ found Dr. Bobba's opinion "persuasive" because, unlike the evaluation by State agency consultant Dr. Mitchell at the initial level, it was "more consistent" with the evidence, which documented "chronic pain and limitations primarily related to [Plaintiff's] back issues, and pain management and imaging and injections." (AR 24.) The ALJ observed that Plaintiff "subsequently had epidurals and then surgery in 2022, but there is very little evidence after that." (AR 24.) The ALJ ultimately concluded that "[t]herefore, there is nothing to prove [Plaintiff] is more limited than what the state agency consultant on reconsideration found." (AR 24.)

No medical expert reviewed the "very little evidence" dated after Plaintiff's December 12, 2022, back surgery. Instead, the ALJ, based on an independent evaluation of that post-surgery evidence, concluded that it did not "prove" Plaintiff was "more limited" than Dr. Bobba found. (AR 24.) In so doing, the ALJ erred. The post-surgery evidence includes raw medical data: x-ray imaging studies of Plaintiff's lumbar spine and cervical spine (AR 382–83, 385–86, 447, 450). *See Howell*, 2022 WL 2759090, at *7. The clinical significance and associated functional deficits—or lack thereof—potentially attributable to these imaging studies were matters beyond the scope of the ALJ's expertise to address independently. *See id*.; *Escudero*, 2019 WL 4917634, *2; *see also Le MacKay*

*v. O'Malley*, No. 1:22-CV-01633-SKO, 2024 WL 169175, at *7 (E.D. Cal. Jan. 16, 2024) (noting an ALJ errs in independently reviewing medical evidence when the evidence concerns "raw medical data such as complex imaging findings or laboratory testing results."). Because the record does not contain an opinion or interpretation directed to functional limitations, if any, resulting from Plaintiff's post-surgery lumbar and cervical imaging, the undersigned finds that the ALJ's conclusion that such imaging did not "prove" Plaintiff was "more limited" than found by the State agency physician Dr. Bobba is not supported by substantial evidence. *See Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute his own judgment for competent medical opinion . . . and must not succumb to the temptation to play doctor and make . . . independent medical findings."); *see also Warren v. Comm'r of Soc. Sec.,* No. 1:24-CV-00751-SAB, 2025 WL 2473120, at *10 (E.D. Cal. Aug. 28, 2025) (finding the ALJ erred in formulating an RFC where the record was void of a "medical finding that 'mild spondylosis at C3-4 and C4-5' and '[s]mall anterior endplate osteophytes noted at C4 and C5,' in consideration of Plaintiff's other assessed physical limitations, translates to modified light work."); *Escudero*, 2019 WL 4917634, *2 (RFC not based on substantial evidence where the ALJ considered x-rays and records indicating Plaintiff's diabetes diagnoses post-dated the accepted physician's opinion on which the ALJ based the RFC); *Goodman v. Berryhill*, No. 2:17-CV-01228 CKD, 2019 WL 79016, at *5 (E.D. Cal. Jan. 2, 2019) (finding that the ALJ erred in adopting state agency consultants' opinions which were rendered before "plaintiff sustained a fall in November 2014" and before "an April 2015 MRI of the lumbar spine [which] showed L1 compression deformity with worsened kyphosis . . . ."); *Stevenson v. Colvin*, No. 15-cv-0463, 2015 WL 6502198, at *4 (E.D. Cal. Oct. 27, 2015) (finding the ALJ improperly interpreted raw medical data when the treatment records consisted of diagnoses and descriptions of the plaintiff's impairments only without any indication of the effects of the impairments on the plaintiff's ability to work).

The Commissioner is correct that "ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work." (Doc. 18 at 6 (quoting *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022)). However, an ALJ is not permitted to render their own medical opinions or independently assess clinical findings. *Tackett*, 180 F.3d at 1102–03 ("It is well-

settled that an ALJ may not render [their] own medical opinion and is not empowered to independently assess clinical findings."); *Miller v. Astrue*, 695 F.Supp.2d 1042, 1048 (C.D. Cal. 2010) (concluding that an ALJ may not act as their own medical expert). The Commissioner fails to establish that the extent of Plaintiff's functional limitations during the relevant time, particularly after her December 12, 2022, back surgery, was apparent to a lay person. Specifically, the undersigned is not convinced the ALJ was qualified to determine a lack of functional limitations resulting from Plaintiff's post-surgery lumbar and cervical spine x-ray studies reflecting "[g]rade 1-2 spondylolisthesis at L5/S1 resulting in moderate bony neural foraminal narrowing"; "congenital L5 pars interarticularis defects" bilaterally, with "displacement"; "osteopenia"; "[s]evere L5-S1 degenerative disc narrowing" with "vacuum phenomenon"; "[b]ilateral L4-S1 facet hypertrophic changes"; "[s]evere C5-C6 degenerative disc narrowing"; and "[m]ild C5-C6 spondylosis" (AR 382–83, 385–86, 447, 450).[4] *See Heskett v. Bisignano*, No. 1:25-CV-00274-SKO, 2025 WL 1993698, at *6 (E.D. Cal. July 17, 2025) (noting that although imaging studies yielded predominately mild findings, "it is not clear what functional limitations result from those clinical findings" and thus the imaging records are the kinds of raw and ambiguous evidence that itself does not provide sufficient indications of Plaintiff's physical functional limitations).

In the absence of any medical opinion addressing Plaintiff's post-surgery imaging studies and their impact, if any, on her function-by-function capabilities, the undersigned finds the ALJ's duty to further develop the record was triggered. *See, e.g., Rondan v. Halter*, 8 F. App'x 724, 725 (9th Cir. 2001) (an ALJ's duty to further develop the record was triggered by the lack of a medical opinion that included consideration of MRIs that Plaintiff had undergone); *Guevara v. Bisignano*, No. 1:22-CV-0490-JLT-CDB, 2025 WL 2781299, at *2–3 (E.D. Cal. Sept. 30, 2025) ("The Court is unable to find the substantial evidence supports the ALJ's decision regarding Plaintiff's physical RFC given the lack of medical opinions following Plaintiff's surgical procedures. Rather, the ALJ's duty to further develop the record was triggered given the absence of such an opinion."); *Warren*, 2025 WL

---

[4] Plaintiff asserts that these studies demonstrate a "worsening" of her impairments post-surgery. (*See* Doc. 16 at 7.) Neither the undersigned nor the ALJ is qualified to make that determination, thereby underscoring the need for medical opinion evidence to evaluate those studies. *See Tackett*, 180 F.3d at 1102–03 (holding the ALJ erred by rejecting physicians' opinions and rendering his own medical opinion); *Nguyen,* 172 F.3d at 35.

2473120, at *12 (finding "lack of a medical opinion that included consideration of the new raw medical data" triggered the ALJ's duty to further develop the record" and the RFC lacked substantial evidence as a result); *Mack v. Saul*, No. 1:18-cv-01287-DAD-BAM, 2020 WL 2731032, at *2 (E.D. Cal. May 26, 2020) (duty to develop where ALJ improperly determined RFC after considering MRIs and radiological studies absent a doctor's opinion on the effect on plaintiff's ability to work on a function-by-function basis).

Remand for further administrative proceedings is therefore appropriate for the ALJ to develop the record and make new findings related to Plaintiff's RFC. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1151 (9th Cir. 2001) (reversing and remanding for further proceedings where the ALJ's RFC determination was not based on a fully developed record); *see also Guevara*, 2025 WL 2781299, at *2–3 (remanding for further proceedings where the record was not fully developed with respect to Plaintiff's physical functional limitations following two spinal surgeries).

## V. FINDINGS AND RECOMMENDATIONS

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (Doc. 16) be GRANTED;
2. The final decision of the Commissioner of Social Security be REVERSED;
3. This matter be REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
4. The Clerk of Court be DIRECTED to enter judgment in favor of Plaintiff Rose Marie Rios, and against Defendant Commissioner of Social Security, and to CLOSE this action.

These findings and recommendations are submitted to the District Judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within **fourteen (14) days** of service of these recommendations, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

The District Judge will review the Magistrate Judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified

time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 16, 2026**

/s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE